*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2026 UT 29**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

GRANITE SCHOOL DISTRICT,
*Petitioner,*

*v.*

ROBYN YOUNG and UTAH LABOR COMMISSION,
*Respondents.*

No. 20240646
Heard October 15, 2025
Filed August 13, 2026*

On Certification from the Court of Appeals

Utah Labor Commission
No. 18-0735

Attorneys:

Bret A. Gardner, Kristy L. Bertelsen, Salt Lake City, for petitioner

Gary E. Atkin, Salt Lake City, for respondent Robyn Young

Christopher Hill, Salt Lake City, for respondent
Utah Labor Commission

JUSTICE NIELSEN authored the opinion of the Court, in which
JUSTICE PETERSEN, ASSOCIATE CHIEF JUSTICE POHLMAN,
JUDGE CHRISTIANSEN FORSTER, and JUDGE HANSEN joined.

Due to his retirement, JUSTICE PEARCE did not participate herein;
DISTRICT COURT JUDGE MATTHEW J. HANSEN sat.

---

* As of January 31, 2026, "The Supreme Court consists of seven
justices." UTAH CODE § 78A-3-101(1). Pursuant to Utah Supreme
Court Standing Order No. 18, this court sat and rendered judgment
in this matter as a division of five justices.

Before this case was decided, CHIEF JUSTICE DURRANT recused himself from this case and JUSTICE HAGEN stepped down from the court. JUSTICE NIELSEN and COURT OF APPEALS JUDGE MICHELE M. CHRISTIANSEN FORSTER, having reviewed the briefs and listened to a recording of the oral argument, substituted for CHIEF JUSTICE DURRANT and JUSTICE HAGEN and participated fully in this decision.

JUSTICE JORGENSEN and JUSTICE DENT became members of the Court after oral argument in this matter and did not participate.

―――――――

JUSTICE NIELSEN, opinion of the Court:

## INTRODUCTION

¶1 While working as a special education teacher for Granite School District, Robyn Young suffered two head injuries at work that left her with debilitating migraines, difficulty sleeping, depression, and other limitations. Young's first treating physician approved Young for light-duty employment, but Granite would not accommodate her work restrictions and fired her. In her first workers' compensation claim, Young was awarded temporary total disability benefits, and Granite was ordered to pay her related medical expenses. But Granite disputed its liability and refused to pay some of those expenses. When the bills went unpaid, the hospital sent them to debt collection agencies. Those collection agencies began hounding Young for payment, causing her significant stress. Young eventually sued the collection agencies in federal court and received a cash settlement. Amidst all this, Young also got divorced.

¶2 After her condition failed to improve to the point that she could return to full-time work, Young filed a second workers' compensation benefits claim, this time seeking an award of permanent total disability benefits. The administrative law judge (ALJ) held an evidentiary hearing and appointed a medical panel to evaluate the effects of the two industrial accidents apart from other stressors in her life (like the bill collectors and her divorce). The panel concluded that all of Young's restrictions were related to her industrial accidents and that the additional stressors were passing and did not contribute to her permanent restrictions.

¶3 Granite twice attempted to reopen the evidentiary record to adduce evidence about two stressors that it believed actually caused her limitations: the collection agencies' actions and Young's

involvement—after the hearing—in a car accident in which a motorcyclist was killed. Granite also asserted a subrogation claim under Utah Code section 34A-2-106, arguing that it should receive a portion of Young's federal lawsuit settlement because, in its view, those proceeds compensated her for her underlying injuries.

¶4　The ALJ denied Granite's subrogation claim, refused to reopen the evidentiary record, credited the panel's report, and ordered Granite to pay past medical expenses, future medical expenses, and permanent total disability benefits. Granite sought review with the Utah Labor Commission. The Commission rejected Granite's arguments, agreeing with the ALJ.

¶5　Granite seeks judicial review of the Labor Commission's order. First, Granite argues that the Commission failed to instruct the medical panel to determine whether Young's limitations were a result of the work accidents as opposed to non-industrial stressors. But that is precisely what the medical panel was instructed to do and precisely what it did.

¶6　Second, Granite argues that the Labor Commission erred in declining to reopen the evidentiary record so that it could present evidence of both the debt collection actions and the post-hearing car accident. But whether to reopen the evidentiary record was a discretionary call, and there was no abuse of discretion where a medical panel determined that the debt collection efforts did not contribute to Young's condition long-term and the car accident happened well after Young suffered permanent disability from the work accidents.

¶7　Third, Granite argues that the Labor Commission erred in awarding Young permanent total disability benefits, challenging the Commission's findings on five of the six elements of Young's permanent total disability claim. We conclude that there was substantial evidence in the record to support the Commission's findings, so its permanent total disability award stands.

¶8　Finally, Granite argues that the Labor Commission erred in refusing to grant a subrogation offset under Utah Code section 34A-2-106. But on this record, it is clear that the federal lawsuit settlement compensated Young for the stress of the improper debt collection tactics, not for her underlying work injuries.

¶9　We decline to disturb the Commission's order.

## BACKGROUND[1]

### A. *Young Suffers Two Head Injuries at Work that Cause Her Persistent Migraine Headaches and Depression*

¶10 Robyn Young worked as a special education resource teacher for Granite School District. Young's job required her to work full time and interact with students with disabilities. On two different occasions, she was injured by a student.

¶11 The first incident happened in 2013. Young was sitting behind a sixth-grade student when the "student threw his head back and 'head butted' [Young] in the face" three times. After this incident, Young was diagnosed with a concussion, received treatment, and returned to work after about one month. The second incident happened slightly over a year later in 2014, when a third-grade student punched Young in the left cheek with a closed fist, grabbed her by the hair, jerked her head around, and ripped chunks of her hair from her scalp. Young later explained that she felt as if she had been "beaten up" during this incident.

¶12 A few days after this second incident, Young went to an occupational medicine clinic, where she reported headaches, nausea, fatigue, and light sensitivity. She was diagnosed with a closed-head injury. She was released to return to work about a month later, but in the ensuing months she continued to have chronic headaches and went to the emergency room twice. She was diagnosed with post-concussive headaches and depression and referred to her first treating physician.

¶13 In July 2014, the first treating physician diagnosed Young with severe complications from recurrent migraines that "snowballed" from her cumulative head trauma and stemmed from the two work incidents. He further noted that Young had facial droop, ear pain, light sensitivity, foot dyskinesias (involuntary, erratic movements), and limb weakness due to her migraines. He concluded that Young was not medically stable and required further treatment.

¶14 A short time later, Young was interviewed by the first of three physicians acting as medical examiners for Granite. Granite's

---

[1] "In reviewing a workers' compensation order from the [Labor Commission], we view the facts in the light most favorable to the Commission's findings and recite them accordingly." *Gamez v. Utah Lab. Comm'n*, 2022 UT 20, n.3, 511 P.3d 1145 (cleaned up).

first physician opined that Young sustained a closed-head injury from the second incident. He agreed with her first treating physician that Young was not medically stable.

¶15   In February 2015, Young's first treating physician released her "to light duty employment consisting of six to ten hours per week, no more than two hours per day." He further directed that the classroom environment needed to provide low light and low noise to mitigate Young's migraines. One morning during her first week of light-duty employment, Young woke up with a migraine, a drooping face, and paralysis in her hands and feet. Three days after she had been cleared to return to work, Granite informed Young that it would not accommodate her light-duty restrictions and terminated her employment.

¶16 Five months after that, Granite's second physician evaluated Young. Granite's second physician opined that Young sustained only a mild head and facial injury from the accident, that she reached medical stability in 2014, and that her ongoing symptoms were not a result of the work accident. Granite's third physician agreed with the second physician's opinions and added that preexisting psychological factors played an overriding role in Young's ongoing physical and cognitive complaints.

B. *Young Files Her First Workers' Compensation Benefits Claim and Is Awarded Temporary Total Benefits*

¶17   In February 2015, Young applied for a hearing with the Labor Commission. Based on the 2013 and 2014 work accidents, Young sought medical expenses, medical care, temporary total disability compensation, and temporary partial disability compensation. The ALJ held an evidentiary hearing and referred the medical issues to a medical panel. The medical panel issued a report, opining that the "2013 industrial accident caused or worsened [Young's] medical and psychological conditions," and the "2014 industrial accident caused a second mild traumatic brain injury concussion, post concussive syndrome and an aggravation of a pre-existing anxiety and depression." The ALJ adopted the medical panel's report, awarded both temporary total disability compensation and temporary partial disability compensation, and ordered Granite to pay for all of Young's medical expenses related

to both industrial accidents.[2] The Labor Commission Appeals Board affirmed the ALJ's award.

### C. *Young Files a Federal Fair Debt Collection Practices Act Lawsuit and Reaches a Monetary Settlement with Collection Agencies over Their Collection Efforts*

¶18  Granite disputed its liability for various medical bills and refused to pay for certain treatment even though the ALJ determined that the condition being treated was caused by the industrial accidents. After the bills went unpaid, the hospital referred them to collection agencies, which began hounding Young through numerous calls and letters. These collection efforts eventually became "a considerable source of stress" for Young.

¶19  In 2016, Young filed a federal lawsuit against the collection agencies under the Fair Debt Collection Practices Act (FDCPA). The case ultimately settled in 2019. Under the settlement agreement, Young was compensated $610,000, of which she received $295,000.

¶20  Granite then sued Young in state district court, seeking reimbursement under the Utah Workers' Compensation Act. *See Granite Sch. Dist. v. Young*, 2023 UT 21, ¶ 11, 537 P.3d 225. Granite alleged that it was entitled to reimbursement out of Young's settlement proceeds because the injuries caused by the collection agencies were the same injuries for which Young had received workers compensation benefits from Granite. *Id.* Young moved to dismiss the case for lack of subject matter jurisdiction, and the district court dismissed the case. *Id.* ¶¶ 12–14. Granite appealed that dismissal to this court. *Id.* ¶ 14. We affirmed, explaining that "the district court . . . correctly determined that it lacked jurisdiction to decide the factual questions at the heart of *this* reimbursement dispute because our precedent dictates that the Labor Commission has exclusive jurisdiction over those questions." *Id.* ¶ 4.

---

[2] "Industrial accident" is a term of art used throughout Utah's Labor Code and denotes a workplace injury. *See, e.g.*, UTAH CODE § 34A-2-401(1) (providing that compensation for industrial accidents shall be paid to employee's "who [are] injured . . . by accident arising out of and in the course of the employee's employment").

### D. Medical Experts Disagree on the Cause of Young's Symptoms

¶21 After her first workers' compensation claim concluded, Young continued to receive medical treatment from her first treating physician. In 2018, Young transferred her primary care to a new doctor. Young's second treating physician performed neuropsychological and cognitive testing on Young and completed "a treating source statement of mental limitations regarding Ms. Young's capacity." The second treating physician's report showed that she had several "moderate functional limitations" in her ability to do the sort of things that her teaching required, like seeing and correcting mistakes, reasoning through decisions, keeping up a consistent routine, following instructions, working with others, responding to feedback, and understanding when her work was acceptable (or not). He also opined that "Young would be absent from work more than four days per month and would potentially be off task 15–20% of the time."

¶22 In 2019, Granite hired an additional medical examiner — this time, a psychologist — to evaluate Young. Granite's psychologist attributed Young's condition to preexisting factors, explaining that Young's "chronic persistent physical symptoms over time are directly correlated to her emotional and psychiatric difficulties, unrelated to organic impairment and unrelated to her injuries sustained in 2013 and 2014."

¶23 Young also hired a psychologist to assess the effects of the debt collectors' actions on her condition. Young's psychologist interviewed Young, several of her family members, and her therapist, and he reviewed several documents, including some depositions from Young's federal lawsuit. Young's psychologist opined that the debt collectors' actions exacerbated Young's migraines, neurologic symptoms, emotional distress, and psychological trauma.

### E. Young Files a Second Workers' Compensation Claim, This Time Seeking Permanent Total Disability Benefits

¶24 In November 2018, Young applied again for a hearing with the Labor Commission. This time around, Young sought medical expenses, medical care, permanent total disability, unpaid interest, and reimbursement for out-of-pocket medical expenses that Granite had previously been ordered, but failed, to pay. Granite answered that Young's claims failed for lack of medical and legal

causation and that Young could not prove the elements of her permanent total disability claim.

¶25 The ALJ scheduled an evidentiary hearing in August 2019. A month before the hearing, Granite moved to compel discovery and continue the hearing. The ALJ denied Granite's motions and ordered the record to "remain open" for a short time "to permit Granite School District to file its expert medical opinion."

¶26 A couple of months later, Granite sent a letter to the ALJ stating that it sought "to introduce 4–5 deposition transcripts" that had been created as part of Young's federal FDCPA case. Granite argued that the depositions should be admitted because they were the basis for the medical opinion of Young's psychologist. Young objected on several grounds, including that admission was procedurally barred under the applicable rule of civil procedure because Granite "affirmatively declined" live testimony from the witnesses twice. The ALJ explained that Young's objections were "persuasive" and denied Granite's request to admit the depositions.

¶27 In early 2020, the parties submitted written closing arguments to the ALJ. In its closing argument, Granite asserted—for the first time—a subrogation claim under Utah Code section 34A-2-106 for the proceeds of Young's FDCPA settlement. Young countered that "the right to subrogation under 34A-2-106 . . . is an affirmative defense" that Granite waived by failing to properly plead and prove it.

¶28 In July 2020, the ALJ denied Granite's claim for subrogation and awarded Young historical medical expenses, future medical expenses, and permanent total disability benefits.

¶29 The next month, Granite filed a motion for review with the Labor Commission, arguing that the ALJ erred in three respects, by: (1) refusing to submit Young's claim to a medical panel, (2) awarding permanent total disability benefits, and (3) refusing to allow a subrogation offset under section 34A-2-106. The Commission agreed with Granite that the question "of which and how much of Ms. Young's functional limitations are attributable to her work injuries compared to the stress of non-industrial factors represents a significant medical issue" that should have been submitted to an independent medical panel. The Commission accordingly set aside the ALJ's preliminary award of permanent total disability compensation and remanded the claim for referral to a medical panel.

¶30 In November 2021, Granite filed a motion for an order to allow additional medical and other records into the evidentiary record. Granite sought to introduce Young's post-hearing therapy records discussing a 2021 car accident involving Young that allegedly led to the death of a motorcyclist, a news article about the car accident, and a supplemental report from Granite's psychologist. Young objected. The ALJ denied Granite's motion, reasoning that "the [Commission] remanded the claim for the medical panel to clarify two specific issues" and it "did not contemplate re-opening the evidentiary record."

¶31 In February 2023, the ALJ issued interim findings and referred the medical aspects of Young's case to a medical panel. The ALJ specifically instructed the medical panel to answer the following questions:

- "Did the March 14, 2013 industrial accident cause, li[gh]t up, combine with, contribute to, accelerate, prolong, aggravate or make symptomatic 'the additional stressors including divorce, financial stress, anxiety due to lack of independence, and the stress of understanding her mental condition?'"

- "Did the March 26, 2014 industrial accident cause, li[gh]t up, combine with, contribute to, accelerate, prolong, aggravate or make symptomatic 'the additional stressors including divorce, financial stress, anxiety due to lack of independence, and the stress of understanding her mental condition?'"

- "What permanent restrictions, if any, resulted from 'the additional stressors including divorce, financial stress, anxiety due to lack of independence, and the stress of understanding her mental condition?'"

- "With respect to each permanent restriction . . . could you please address whether the restriction is granted for March 14, 2013 industrial injuries, March 26, 2014 industrial injuries or non-industrial causes? Please explain your response."

- "What, if any, functional restrictions assigned by [Young's second treating physician] are attributable to the March 14, 2013 industrial injuries? Please explain your response."

- "What, if any, functional restrictions assigned by [Young's second treating physician] are attributable to the March 26, 2014 industrial injuries? Please explain your response."

- "What, if any, functional restrictions assigned by [Young's second treating physician] are attributable to non-industrial factors? Please explain your response."

¶32 The medical panel conducted an evaluation and issued a report. The panel noted that Young had restrictions related to ongoing PTSD and anxiety as well as her ability to function in areas of attention, focus, pace, and emotional stability. The panel concluded that all of Young's functional restrictions related to the two work accidents and that her additional stressors caused only temporary or adjustment reactions and did not contribute to her permanent industrial functional restrictions.

¶33 Granite objected to the medical panel report, arguing that it had "glaring deficiencies due to the excluded medical evidence and other information related to the . . . fatal motor vehicle accident." The ALJ rejected Granite's argument, explaining that it "had previously ruled on this issue and denied the motion." And, relying on the medical panel's report, the ALJ found "based upon a preponderance of the medical evidence that [Young's] functional restrictions are based entirely on her industrial medical conditions." The ALJ accordingly ordered Granite to pay historical medical expenses, future medical expenses, and permanent total disability benefits.

¶34 Granite filed another motion for review with the Labor Commission, arguing that the medical panel's report was inaccurate and incomplete because "the questions posed by the ALJ failed to clearly instruct the Panel on the analysis it needed to complete." Because the ALJ "failed to instruct the Panel on what to include as 'industrial' and what to include as 'non-industrial,'" Granite argued that "the Panel's conclusions clearly include[d] the impact of the tortious debt collection activities and other non-industrial stressors in the impairment it consider[ed] attributable to the industrial accidents." Granite also asked the Commission to recognize its subrogation interest in Young's settlement proceeds. The Commission rejected Granite's arguments and ruled that the medical panel's report was reliable, that the medical panel understood the issues it was asked to consider, that Young proved the elements of her permanent total disability claim, and that Granite was not entitled to a subrogation offset. The Commission therefore affirmed the ALJ's award of permanent total disability benefits to Young.

¶35 Granite petitioned for judicial review, and the court of appeals certified the case to us. We have jurisdiction over cases certified to us by the court of appeals under Utah Code subsection 78A-3-102(3)(a)(ii).

## ISSUES AND STANDARDS OF REVIEW

¶36 Granite first argues that the Labor Commission erred in instructing the medical panel that reviewed Young's permanent disability claim. To the extent that Granite challenges the Commission's interpretation of the charging order, we review for abuse of discretion. UTAH CODE § 63G-4-403(5)(h)(i);[3] *see, e.g., Danny's Drywall v. Lab. Comm'n*, 2014 UT App 277, ¶ 8, 339 P.3d 624. And to the extent that Granite challenges the admissibility of the report based on allegedly incorrect instructions, we also review for abuse of discretion, reversing "only if a reasonable basis for that decision is not apparent from the record." *Horning v. Lab. Comm'n*, 2023 UT App 30, ¶ 18, 529 P.3d 352 (cleaned up).

¶37 Granite next argues that the Labor Commission erred in declining to reopen the evidentiary record. We cannot grant relief unless we determine both that Granite was prejudiced by the Commission's action, and that the Commission abused its statutorily delegated discretion because its action was contrary to an agency rule, contrary to prior practice, or was otherwise arbitrary or capricious. *See* UTAH CODE § 63G-4-403(5)(h); *cf. Ernest Health, Inc. v. Lab. Comm'n*, 2016 UT App 48, ¶¶ 3–9, 369 P.3d 462 (reviewing the Labor Commission's denial of leave to reopen the evidentiary record for abuse of discretion).

¶38 Granite next argues that the Labor Commission erred in awarding permanent total disability benefits to Young. Generally speaking, "a challenge to an administrative agency's finding of fact is reviewed for substantial evidence." *Provo City v. Utah Lab. Comm'n*, 2015 UT 32, ¶ 8, 345 P.3d 1242; *see also* UTAH CODE § 63G-4-403(5)(g). "A decision is supported by substantial evidence if there is a quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Provo City*, 2015 UT 32, ¶ 8 (cleaned up). But as explained in greater detail

---

[3] While the 2024 version of the Utah Code applies and the legislature has made some subsequent changes to the code, no substantive changes are applicable here, nor do any of the changes impact our analysis. Thus, we cite the current version of the code throughout this opinion for both convenience and clarity.

below, some elements are mixed questions and warrant a different standard of review. *Id.* ¶¶ 12–22.

¶39 Finally, Granite argues that the Labor Commission erred in refusing to grant a subrogation offset under Utah Code section 34A-2-106. We review an agency's interpretation of a statute for correctness. *LPI Servs. v. McGee*, 2009 UT 41, ¶ 7, 215 P.3d 135; *see also Esquivel v. Lab. Comm'n*, 2000 UT 66, ¶¶ 13–19, 7 P.3d 777. "And we review the lower tribunal's ultimate conclusion of whether a given set of facts comes within the reach of a given rule of law as a mixed question of law and fact." *Gamez v. Utah Lab. Comm'n*, 2022 UT 20, ¶ 23, 511 P.3d 1145 (cleaned up).

## ANALYSIS

### I. GRANITE HAS NOT CONVINCED US THAT THE MEDICAL PANEL WAS WRONGLY INSTRUCTED

¶40 Granite first asserts that the Labor Commission failed to instruct the medical panel to distinguish which of Young's limitations were a result of work accidents as opposed to non-industrial stressors. In Granite's view, the deficient instructions resulted in a flawed report that should not have been relied upon by the ALJ or the Commission. Young responds that the instructions were sufficiently detailed and that the panel clearly differentiated between the industrial injuries and the non-industrial stressors. We agree with Young.

¶41 The ALJ's questions to the panel asked it to parse the impact of the 2013 work accident, the 2014 work accident, and the stress of non-industrial factors—"divorce, financial stress, anxiety due to lack of independence, and the stress of understanding her mental condition"—on Young's ability to work.

¶42 The panel answered that all of Young's functional restrictions stemmed from the work accidents. The other stressors, the panel opined, caused only temporary or adjustment reactions and did not contribute to her permanent industrial functional restrictions. Relying on the medical panel's report, the ALJ ultimately found by "a preponderance of the medical evidence that [Young's] functional restrictions are based entirely on her industrial medical conditions." And the Labor Commission "concur[red] with [the ALJ's] decision to rely on the panel's conclusions regarding the work-relatedness of Ms. Young's limitations."

¶43 So, the ALJ instructed the panel to separate out the impacts of the two work accidents from other life stressors, and the panel said that the work accidents on their own were permanently debilitating, while the impact from other stressors was passing and noncontributory. On judicial review, Granite has pointed to no authority—and we are aware of none—suggesting that the ALJ was required to instruct the panel more granularly than it did. Therefore, we decline to set aside the Labor Commission's award on this basis.

II. THE ALJ DID NOT ABUSE ITS DISCRETION BY DENYING GRANITE'S MOTION TO REOPEN THE EVIDENCE

¶44 Granite next asserts that the Labor Commission erred in upholding the ALJ's decision not to reopen the evidentiary record. Granite sought to introduce evidence about Young's federal debt collection lawsuit discussed above and her involvement in a car accident years after the hearing. In response, Young asserts that the ALJ acted within its discretion in declining to reopen the record. Again, we agree with Young.

¶45 The administrative code provides that "the evidentiary record shall be deemed closed at the conclusion of the hearing, and no additional evidence will be accepted without leave of the administrative law judge." UTAH ADMIN. CODE R602-2-1(I)(8). This provision—particularly the phrase "leave of the administrative law judge," *id.*—suggests that the decision of whether to reopen the evidentiary record after a hearing is a discretionary one left to the ALJ. The noun "leave" is commonly understood to mean "[p]ermission." *Leave n.*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see also Leave of Court*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "leave of court" as "[j]udicial permission to follow a nonroutine procedure").

¶46 Reviewing a decision to not grant a party leave to reopen the evidentiary record for an abuse of discretion also makes logical sense. The Labor Commission generally has discretion over how to investigate each case. Under Utah Code subsection 34A-2-802(1), "The commission may make its investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of the chapter." In this vein, the court of appeals has reviewed the Labor Commission's denial of a motion to reopen the evidentiary record for an abuse of discretion. *See Ernest Health, Inc. v. Lab. Comm'n*, 2016 UT App 48, ¶¶ 3–9, 369 P.3d 462. And we cannot grant relief unless we

determine both that Granite was prejudiced by the Commission's action and that the action was an abuse of the Commission's statutorily delegated discretion, contrary to an agency rule, contrary to prior practice, or otherwise arbitrary or capricious. *See* UTAH CODE § 63G-4-403(5)(h).

¶47 The question before us, then, is whether the ALJ abused its discretion in declining to reopen the evidentiary record at Granite's requests. The hearing was held on August 23, 2019, after which the ALJ ordered the record to "remain open for a period of twenty days . . . to permit Granite School District to file its expert medical opinion." But Granite did not file its expert medical opinion or make its requests to reopen the record within that twenty-day window. Instead, Granite's two requests to reopen the evidentiary record were made two months and two years after the hearing, respectively. The ALJ agreed with Young first that Granite was procedurally barred from admitting depositions of witnesses after it declined live testimony and second that the Commission "remanded the claim for the medical panel to clarify two specific issues" and it "did not contemplate re-opening the evidentiary record."

¶48 Like all things, the presentation of evidence must come to an end sometime, and the ALJ did not abuse its discretion by drawing the line where it did, particularly where the medical panel found that the debt collection efforts explored in the depositions sought to be admitted did not meaningfully contribute to Young's condition. And some of the evidence Granite sought to introduce (like the car accident) was irrelevant anyway because it related to events after both the hearing and the ALJ's finding of permanent and total disability. Young's condition thereafter could not become either more permanent or more total.

¶49 Our administrative code gives an ALJ discretion over whether to grant a party leave to reopen the evidentiary record. Under the circumstances here, Granite has not persuaded us that the Labor Commission erred in upholding the ALJ's discretionary call.

III. THE LABOR COMMISSION'S PERMANENT TOTAL DISABILITY AWARD STANDS

¶50 Granite next argues that the Labor Commission erred in awarding Young permanent total disability benefits. Specifically, Granite challenges the Commission's findings on five of the six elements of Young's permanent total disability claim.

¶51 Utah Code subsection 34A-2-413(1) states the elements of a permanent total disability claim. The permanent total disability statute requires workers to prove six elements "by a preponderance of the evidence":

(1) "the employee sustained a significant impairment or combination of impairments as a result of the industrial accident . . . that gives rise to the permanent total disability entitlement";

(2) "the employee is not gainfully employed";

(3) "the employee has an impairment or combination of impairments that reasonably limit the employee's ability to do basic work activities";

(4) "the . . . impairment or combination of impairments prevent the employee from performing the essential functions of the work activities for which the employee has been qualified until the time of the industrial accident . . . that is the basis for the employee's permanent total disability claim";

(5) "the employee cannot perform other work reasonably available, taking into consideration the employee's: (A) age; (B) education; (C) past work experience; (D) medical capacity; and (E) residual functional capacity"; and

(6) "the industrial accident or occupational disease is the direct cause of the employee's permanent total disability."

UTAH CODE § 34A-2-413(1)(b)–(c); *see also Provo City v. Utah Lab. Comm'n*, 2015 UT 32, ¶ 6, 345 P.3d 1242.

¶52 "It is well settled that when faced with a question of statutory interpretation, our primary goal is to evince the true intent and purpose of the legislature." *Anderson v. Utah Dep't of Com.*, 2025 UT 19, ¶ 14, 572 P.3d 373 (cleaned up). In doing so, "we begin by looking at the plain language of the statute itself," and "when the meaning of a statute can be discerned from its language, no other interpretive tools are needed." *Id.* (cleaned up). Further, "we assume, absent a contrary indication, that the legislature used each term advisedly according to its ordinary and usually accepted meaning." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (cleaned up).

¶53 We uphold an agency's factual findings so long as they are supported by "substantial evidence when viewed in light of the whole record." UTAH CODE § 63G-4-403(5)(g). "A decision is

supported by substantial evidence if there is a quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Provo City*, 2015 UT 32, ¶ 8 (cleaned up). "In conducting a substantial evidence review, we do not reweigh the evidence and independently choose which inferences we find to be the most reasonable"; rather, "we defer to an administrative agency's findings because when reasonably conflicting views arise, it is the agency's province to draw inferences and resolve these conflicts." *Id.* (cleaned up).

¶54 Granite has challenged the Commission's findings on five of the six elements of Young's permanent total disability claim.[4] We analyze each of these elements in turn and conclude that there was substantial evidence in the record to support Young's permanent total disability claim.

### A. Significant Impairment

¶55 The Labor Commission determined that Young suffered a significant impairment or combination of impairments from the industrial accidents. In support of this determination, the Commission relied on the second treating physician's report indicating that Young "had functional limitations that interfered with her ability to recognize and correct mistakes, use reason and judgment to make work-related decisions, and work at an appropriate and consistent pace, among other things." Granite takes issue with this determination, arguing that because no treating physician has provided Young with an impairment rating, her subjective complaints of impairment cannot satisfy this element. Granite also suggests that there is not substantial evidence to support the Commission's impairment determination and that Young's limitations were really from non-industrial factors.[5]

---

[4] The Labor Commission found that Young "cannot perform other work reasonably available considering her age, education, past work experience, medical capacity, and residual functional capacity." Granite has not challenged that finding on review, so we do not analyze it.

[5] In *Provo City v. Utah Labor Commission*, we explained that this element presents a mixed question of law and fact. 2015 UT 32, ¶ 16, 345 P.3d 1242. Granite's argument that the permanent total disability statute requires an impairment rating presents a

(continued . . .)

¶56 Granite is mistaken on both points. The permanent total disability statute requires an employee to show that "the employee sustained a significant impairment or combination of impairments . . . that gives rise to the permanent total disability entitlement." UTAH CODE § 34A-2-413(1)(b)(i). As our court of appeals has previously concluded, the statute does not require a precise impairment rating. *See Rouse v. Lab. Comm'n*, 2024 UT App 77, ¶ 35, 551 P.3d 1014 ("Utah courts have declined to define significant impairment in terms of an exact impairment-rating percentage, instead choosing to evaluate the severity of the impairment in terms of the specific individual who has suffered a work-related injury." (cleaned up)). In the Workers' Compensation Act, an impairment is defined as "a purely medical condition reflecting an anatomical or functional abnormality or loss." UTAH CODE § 34A-2-102(1)(i). And "the question of whether a particular impairment is 'significant,' . . . requires a court to evaluate the severity of the impairment and determine whether the level of impairment exceeds a minimum threshold." *Provo City*, 2015 UT 32, ¶ 16.

¶57 Here, there was substantial evidence to support the Commission's determination that Young suffered from a significant impairment or combination of impairments—namely, the second treating physician's report. In this report, the physician stated that

> Young had moderate functional limitations with, but not limited to: recognizing and correcting mistakes; using reason and judgment to make work-related decisions; working at an appropriate and consistent pace; sustaining an ordinary routine and regular work attendance; following instructions to carry out a task; cooperating with others; responding to requests, suggestions, and criticism; and distinguishing between acceptable and unacceptable work performance.

Additionally, the medical panel opined that all of the functional restrictions identified by the second treating physician were

---

statutory interpretation question, reviewed for correctness. *See LPI Servs. v. McGee*, 2009 UT 41, ¶ 7, 215 P.3d 135. But a challenge to the Commission's determination regarding the severity of the employee's impairment is reviewed for substantial evidence. *Provo City*, 2015 UT 32, ¶ 18.

attributable to Young's 2013 and 2014 work accidents and none of them were attributable to non-industrial factors.

¶58 The second treating physician's report—which was credited by the medical panel, the ALJ, and the Commission—satisfies the substantial evidence standard. Young suffers from an impairment or a combination of impairments that have resulted in functional limitations, *see* UTAH CODE § 34A-2-413(1)(b)(i), and the severity of her impairments "exceeds a minimum threshold," *see Provo City*, 2015 UT 32, ¶ 16.[6]

### B. No Gainful Employment

¶59 The Labor Commission found that Young was not gainfully employed at the time of the hearing. The Commission explained, "While she has worked a limited and irregular schedule since the accidents and receives some financial benefit from her role as an online sales representative, the [Commission] does not view these activities as gainful employment." Before the Commission and again to us, Granite has argued that Young is "capable of gainful employment" because she has completed a master's degree in education, worked as an online sales representative, worked for another school district, volunteered at her child's school, and attended exercise classes since the work accidents. Granite also argued Young's work as an online sales representative since reaching medical stability constitutes "some level of gainful employment." The Commission rejected these arguments, explaining that the "second element simply asks whether Ms. Young is currently gainfully employed" and her role as an online sales representative does not qualify as gainful employment. We agree with the Commission's interpretation of the permanent total disability statute.[7]

---

[6] We did not elaborate in *Provo City* on what the "minimum threshold" for impairment was and do not have occasion to do so here where Young's impairments exceed that level. But the legislature has defined what "impairment" means in this area: "a purely medical condition reflecting an anatomical or functional abnormality or loss." UTAH CODE § 34A-2-102(1)(i).

[7] The Commission's interpretation of a statute is reviewed for correctness. *See LPI Servs.*, 2009 UT 41, ¶ 7. But we also clarify the standard of review for the second element of a permanent total

(continued . . .)

¶60 The meaning of Utah Code subsection 34A-2-413(1)(c)(i) is clear from verb tense it uses. It provides that to establish a claim for permanent total disability, the employee must prove by a preponderance of the evidence that "the employee is not gainfully employed." UTAH CODE § 34A-2-413(1)(c)(i). And "[a] statutory reading that credits a verb's tense is not uncommon." *Scott v. Scott*, 2017 UT 66, ¶ 24, 423 P.3d 1275. The legislature's use of the word "is" is significant here. This court has explained that the "present tense *is* demands the condition to be present at the time" of the relevant event. *Id.* ¶ 30.

¶61 Indeed, when faced with this exact question, the court of appeals concluded that the legislature's use of the present-tense verb "is" in the permanent total disability statute was deliberate. *Prows v. Lab. Comm'n*, 2014 UT App 196, ¶¶ 11–12, 333 P.3d 1261. Thus, the court concluded that to satisfy this element, "an employee claiming a permanent total disability must at a minimum prove that she is not currently gainfully employed" "at the time of the hearing." *Id.* ¶ 12.

¶62 We agree with the court of appeals and the Commission's interpretation of Utah Code subsection 34A-2-413(1)(c)(i). At the hearing, Young was required to show only that she "is not currently gainfully employed." *Prows*, 2014 UT App 196, ¶ 12. And there was substantial evidence in the record to support the Commission's finding that Young was not gainfully employed at that time.

¶63 There was also substantial evidence that she was not "gainfully employed." Although she had "worked a limited and irregular schedule since the accidents," the Commission found that Young's activities did not qualify as "gainful employment." The

_____

disability claim. Except for significant impairment and causation, the elements of a permanent total disability claim involve "specific inquiries into an employee's ability to work." *Oliver v. Utah Lab. Comm'n*, 2017 UT 39, ¶ 16, 424 P.3d 22. We have previously explained that three of these elements present questions of fact that we review for substantial evidence. *See Provo City*, 2015 UT 32, ¶¶ 12–14. We see no reason to deviate from that trend for the gainful employment element. After reviewing the statutory interpretation question for correctness, we review the facts supporting the Commission's finding that Young is not gainfully employed for substantial evidence.

evidence showed that in her position as an online sales representative, Young earned "between $100 and $150 per month from sales to friends and family." There was substantial evidence for the Commission to conclude that Young was not gainfully employed while making merely $25 to $37.50 per week. And it is not our province to "reweigh the evidence and independently choose which inferences we find to be the most reasonable." *See Provo City*, 2015 UT 32, ¶ 8 (cleaned up).

### C. *Limited Ability to Perform Basic Work Activities*

¶64 The Labor Commission found that "Young is limited in her ability to do basic work activities." While the Commission acknowledged that the "evidence may demonstrate Ms. Young's capacity to perform certain work activities," it referred to the second treating physician's "uncontroverted conclusions regarding Ms. Young's impairment," which show her limited "ability to meaningfully perform the core tasks that are basic prerequisites to employment even if she has demonstrated an ability to perform other basic work activities." Granite contests this finding, arguing that Young's educational, work, volunteer, and exercise history demonstrate her "ability to regularly and consistently appear for a scheduled activity, follow directions, openly communicate with others, perform tasks within a limited time period, and reflect more than average endurance, mental capacity and professional skills." Specifically, Granite points to the report of its psychologist as "medical evidence" that "dispute[s] Young's claim of disability."

¶65 This court has held "that basic work activities are not just any activities that are typically performed in the workplace. Instead, they are those activities that are essential to a broad spectrum of jobs available." *Oliver v. Utah Lab. Comm'n*, 2017 UT 39, ¶ 23, 424 P.3d 22 (cleaned up). "[W]hether an employee is 'limited' in his [or her] ability to perform basic work activities depends on whether, notwithstanding his [or her] impairments, he [or she] is meaningfully able to perform the core tasks that are basic prerequisites to employment." *Id.* ¶ 24. In other words, "proof of permanent total disability requires proof of a limitation that strikes at the heart of those abilities and aptitudes necessary to do most jobs." *Id.* (cleaned up). Just because evidence that an employee is limited in his or her ability to perform basic work activities "is contradicted in some respects by some of the medical evaluations" does not mean that the Commission's finding is not supported by substantial evidence. *Provo City*, 2015 UT 32, ¶ 30.

¶66 Here, substantial evidence supports the Commission's finding that Young was limited in her ability to do basic work activities. Again, the second treating physician's report showed that Young has limitations in "recognizing and correcting mistakes; using reason and judgment to make work-related decisions; working at an appropriate and consistent pace; sustaining an ordinary routine and regular work attendance; following instructions to carry out a task; cooperating with others; responding to requests, suggestions, and criticism; and distinguishing between acceptable and unacceptable work performance." Although the second treating physician's report may have been "contradicted in some respects" by the report of Granite's psychologist, that is not enough to demonstrate that the Commission's finding was not supported by substantial evidence. *See id.*

### D. Inability to Perform Essential Functions of Former Work

¶67 The Labor Commission found that Young's "work-related condition prevents her from performing the essential functions of the work activities for which she was qualified at the time of the accidents." The Commission explained that Young's "prior work as a special-education teacher and teaching assistant" required her "to adhere to a full-time schedule and interact with special-needs students throughout the workday." Granite pushes back on the Commission's finding, arguing that because "Young returned to her regular work activities between the first and second work accidents," the Commission should not have relied solely on "Young's subjective reports of limitation and restriction."

¶68 As with the other elements of a permanent total disability claim, the burden of proof is on the employee to show that the employee is prevented "from performing the essential functions of the work activities for which the employee [was] qualified until the time of the industrial accident." UTAH CODE § 34A-2-413(1)(c)(iii). But this court has recognized that because "the burden of proof on this element requires an employee to prove a negative," "the employee's burden of production is not high." *Oliver*, 2017 UT 39, ¶ 56. In fact, "all the employee need adduce is competent testimony (by the employee or others)" that he or she is not qualified to perform the job "he or she was working at the time of the injury." *Id.* And "[i]f the employer does not then challenge this testimony or otherwise introduce contrary evidence, this production—even if it comes in as minimal a form as a blanket statement by the

employee about his or her qualifications—will ordinarily suffice to meet the employee's burden of proof on the essential functions element." *Id.*

¶69 Here, the Commission relied on Young's testimony that she could not perform the essential functions of the job she was qualified for before the work accidents. The Commission explained,

> Ms. Young testified that on a good day, she is able to take her children to school, attend a fitness class, run errands, and spend time with her children after school. On bad days, Ms. Young explained she must rest for most of the day and cannot perform any of the aforementioned tasks. She described that she experiences excessive irritability and cannot endure criticism. Ms. Young also testified that she lacks organization skills and focus to complete the tasks she performed prior to the work accidents. Ms. Young explained that she experiences between one and five migraine headaches per week and takes a full day to recover from each one. On occasion, she suffers from a hemiplegic migraine that causes nausea and muscle paralysis in her face, hands, and feet, and renders her unable to speak.

Granite claims that it countered Young's testimony with evidence that, after the accidents, Young obtained a master's degree in education and participated in "physically demanding workouts, public volunteer activities, [and] online business sales."

¶70 But the Commission considered all of this evidence, and it still determined that Young proved this element by a preponderance of the evidence. The Commission explained that it took Young four years to complete her master's degree and she "was accommodated by not having to adhere to deadlines when submitting her work." Young's volunteer work involved "teaching art appreciation, helping with a school play for about an hour and a half, and attending PTA meetings." In her job as an online sales representative, she earns "between $100 and $150 per month from sales to friends and family." Young's customers do not place their orders directly with her, and she does not personally fulfill the orders. She "is able to use a computer with a dimmed screen for only a few hours at a time." And her workouts were adjusted to her

ability level and contingent on her feeling up to them on a given day.

¶71 Young produced "a quantum and quality of relevant evidence that [was] adequate to convince a reasonable mind" that she was no longer able to adhere to a full-time schedule, which was an essential function of her former work. *See Provo City*, 2015 UT 32, ¶ 8 (cleaned up). We accordingly decline Granite's invitation to "reweigh the evidence and independently choose which inferences we find to be the most reasonable." *Id.* (cleaned up). Instead, we defer to the Commission's finding that Young could not perform the essential functions of the job she was qualified for before the work accidents "because when reasonably conflicting views arise, it is the [Commission's] province to draw inferences and resolve these conflicts." *Id.* (cleaned up).

*E. Direct Cause*

¶72 The Labor Commission found that Young "established a direct causal connection between her permanent total disability and the work accidents." The Commission acknowledged that "psychosocial stress and non-industrial factors in Ms. Young's life . . . worsened her symptoms," but it ultimately relied on the medical panel's report, which "persuasively show[ed] that the limitations described" by the second treating physician were "due to the effects of the work accidents."

¶73 Granite does not argue that the Commission applied the wrong legal standard for causation; it simply argues that the Commission's causation finding is not supported by the evidence.[8] We conclude that there was substantial evidence to support the Commission's direct-cause finding.

¶74 "Direct cause" means medical cause, which in turn means but-for cause. "In cases where there is no preexisting condition contributing to a disability, the employee need only prove that the work accident is the medical cause of the disability"—meaning that "an accident is the but-for cause of the disability." *Provo City*, 2015 UT 32, ¶ 20. In cases where a preexisting condition contributes to

---

[8] In *Provo City*, we reviewed a challenge to the Commission's method of determining legal causation on this element de novo. 2015 UT 32, ¶ 22. However, since Granite is arguing that the Commission's causation finding is not supported by the evidence, we review under the substantial evidence standard. *See id.* ¶ 17.

the disability, the employee has an additional burden: the employee must also prove legal causation. *Id.* ¶ 21. The legal causation test requires the employee to prove "that the employment contributed something substantial to increase the risk he [or she] already faced in everyday life because of his [or her] condition." *Id.* (cleaned up); *see also YESCO v. Lab. Comm'n*, 2021 UT App 96, ¶ 15, 497 P.3d 839 ("A correct formulation of [the medical causation] standard asks whether the industrial accident contributed to the employee's medical condition in any degree, such as by aggravating a preexisting condition, or . . . by aggravating other contributing non-industrial factors." (cleaned up)).

¶75 Before the Commission, Granite argued that Young's disability was attributable to both preexisting conditions and post-accident stressors. Granite presented evidence that Young's condition was attributable to preexisting conditions, namely generalized anxiety and major depressive disorder. But "just because a person suffers a preexisting condition, he or she is not disqualified from obtaining compensation. Our cases make clear that the aggravation or lighting up of a pre-existing disease by an industrial accident is compensable." *Provo City*, 2015 UT 32, ¶ 36 (cleaned up). The medical panel concluded that because Young had no history of headaches prior to her work accidents, her limitations could not be attributed entirely to her preexisting conditions.

¶76 Granite also argued that certain post-accident stressors contributed to Young's disability, "including divorce, financial stress, anxiety due to her lack of independence, and the stress of understanding her mental condition." The question of what impact these stressors had on Young's disability was directly posed to — and answered by — the medical panel. *See supra* ¶¶ 38–41. The panel found that all of Young's functional restrictions related to the work accidents, that her additional stressors caused only temporary or adjustment reactions, and that her additional stressors did not contribute to her permanent industrial functional restrictions.

¶77 Both the ALJ and the Commission credited the panel's findings. The Commission's finding that Young's work accidents were "the direct cause of [her] permanent total disability," *see* UTAH CODE § 34A-2-413(1)(b)(iii), was supported by substantial evidence.

¶78 In sum, there was substantial evidence to support the Commission's findings that Young proved the challenged elements of her permanent total disability claim by a preponderance of the

evidence. We decline to set aside the Labor Commission's award on this basis.

## IV. GRANITE IS NOT ENTITLED TO A SUBROGATION OFFSET

¶79 Finally, Granite argues that the Labor Commission erred in refusing to grant a subrogation offset under Utah Code section 34A-2-106. That provision provides that "[w]hen any injury or death for which compensation is payable under [the Workers' Compensation Act] . . . is caused by the wrongful act or neglect of a person other than an employer, officer, agent, or employee of the employer" and a "recovery is obtained against a third person, it shall be disbursed" in the designated manner, which can include a "credit" to the employer. UTAH CODE § 34A-2-106(1), (5)(a)(ii). Granite contends that the "only pre-requisite to the application of Section 106 is the receipt of third-party proceeds." Because Young received settlement proceeds from the collection agencies and because Granite believes that those proceeds overlapped with benefits it has paid and will pay to Young, Granite argues that it is entitled to a subrogation offset against Young's settlement. We disagree for two reasons.

¶80 First, Granite made no attempt to reopen the evidentiary record or otherwise prove that there was overlap between Young's settlement proceeds and its payment obligations after this court's decision in *Granite School District v. Young*, 2023 UT 21, 537 P.3d 225. As noted above, Granite raised this issue in separate state court proceedings. *Id.* ¶ 11. The district court dismissed that case for lack of subject matter jurisdiction. *Id.* ¶ 14. We affirmed and explained that "reimbursement in this case will turn on the resolution of factual disputes relating to the industrial accidents for which Granite has paid benefits and the injuries the debt collectors inflicted on Young for which they paid to settle the FDCPA claims," which were questions the Labor Commission "need[ed] to resolve" and was "in the process of resolving." *Id.* ¶¶ 35–36. Although Granite unsuccessfully sought to introduce deposition transcripts from Young's federal lawsuit, that request was made before this court's decision was issued and it was not for the purpose of proving Granite's right to subrogation.

¶81 Second, the overlap that Granite asserts does not exist on this record. The Labor Commission adopted the ALJ's factual findings regarding the source of Young's "symptoms and permanent limitations." The Commission explained that "Young's entitlement to benefits under the [Workers' Compensation] Act

was based on the symptoms and permanent limitations she incurred entirely from the work injuries and not from the tortious debt collection." Accordingly, "[t]he work accidents were not necessarily intertwined with the tort—it was the purposeful and wrongful actions of [the collection agencies] that led to the tort recovery rather than the work accidents."

¶82 Without any evidence showing an overlap between Young's settlement proceeds and Granite's payment obligations to Young, we cannot say that the Commission erred in refusing to grant Granite a subrogation offset under Utah Code section 34A-2-106. We decline to disturb the Labor Commission's award on this basis.

## CONCLUSION

¶83 The Labor Commission did not err in upholding the ALJ's instructions to the medical panel or the ALJ's decision to not grant Granite leave to reopen the evidentiary record after the hearing. There was substantial evidence in the record to support the Commission's findings that Young proved each of the challenged elements of her permanent total disability claim. And the Commission did not err in refusing to grant Granite a subrogation offset. Accordingly, we decline to disturb the Commission's order.

––––––––––––